# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**D.U., a minor,**

    **Plaintiff,**

    v.                                           Case No. 13-CV-1457

**KITTY RHOADES and KELLY TOWNSEND,**

    **Defendants.**

## DECISION AND ORDER ON PLAINTIFF'S
## MOTION FOR A PRELIMINARY INJUNCTION

In this 42 U.S.C. § 1983 action, plaintiff D.U., a minor child, sues defendant Kitty Rhoades, Secretary for the Wisconsin Department of Health Services ("DHS") and Kelly Townsend, a nurse consultant in the Quality Assurance and Appropriateness Review Section ("QAARS") in the DHS' Office of the Inspector General, for allegedly violating the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provision of the Medicaid Act ("the Act") by reducing the hours of D.U.'s Medicaid-funded private duty nursing care. D.U. has moved for a preliminary injunction enjoining the DHS from providing D.U. with fewer than 70 hours of private duty nursing care a week. For the reasons stated below, D.U.'s motion for a preliminary injunction is denied.

## BACKGROUND

*1.  Legal Background*

In 1965, Congress enacted the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, as Title XIX of the Social Security Act. *Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011). Medicaid is a jointly financed federal-state cooperative program, designed to help states furnish medical treatment to their

needy citizens. *Id.*; *see also Bontrager v. Indiana Family and Social Services Admin.*, 697 F.3d 604, 605-06 (7th Cir. 2012). States devise and fund their own medical assistance programs, subject to the requirements of the Medicaid Act, and the federal government provides partial reimbursement. *See* 42 U.S.C. §§ 1396b(a), 1396d(b). A state's participation in the Medicaid program is voluntary, but once a state opts to participate, it must comply with federal statutory and regulatory requirements. *Bontrager*, 697 F.3d at 606. Wisconsin participates in the Medicaid program and is therefore bound by its rules and regulations. Wis. Admin. Code Ch. DHS 101.

The Medicaid Act, as supplemented by regulations promulgated by the Department of Health and Human Services ("HHS"), "prescribes substantive requirements governing the scope of each state's program." *Moore*, 637 F.3d at 1232 (citation omitted). Section 1396a provides that a "State plan for medical assistance" must meet various guidelines, including the provision of certain categories of care and services. *See* 42 U.S.C. § 1396a. Some of these categories are discretionary, while others are mandatory for participating states. *Id.* § 1396a(a)(10) (listing mandatory categories). Section 1396a(a)(17) provides that "[a] State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which ... are consistent with the objectives of this [Title]."

In 1989, Congress amended the Medicaid Act to broaden the categories of services that participating states must provide to Medicaid-eligible children. *Moore*, 637 F.3d at 1233. The 1989 Amendment mandates that participating states provide EPSDT services to all Medicaid-eligible persons under the age of 21. *Id.* The EPSDT program is codified at 42 U.S.C. § 1396d(r). Section 1396d(r)(5), a catch-all provision, mandates that participating states provide to Medicaid-eligible children "[s]uch other necessary health care, diagnostic services, treatment, and other measures

described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." Section 1396d(a)(1)-(29) enumerates 29 categories of care and services defined as "medical assistance," which includes "private duty nursing services." *See* § 1396d(a)(8). In other words, under the EPSDT, it is mandatory for states to provide all 29 categories of care, including "private duty nursing services," to Medicaid-eligible children who qualify under the EPSDT provision.

However, a state "may place appropriate limits on a service based on such criteria as medical necessity." 42 C.F.R. § 440.230(d). A state's provision of a required EPSDT benefit, such as private duty nursing services, "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). Although states do not have discretion over the categories of medical services and treatment that must be provided to children, the EPSDT did not change the "medical necessity" limitation. *Moore*, 637 F.3d at 1234. Thus, even if a category of medical services or treatments is mandatory under the Medicaid Act, participating states must provide those medical services or treatments for Medicaid recipients only if they are medically necessary. *Id.* at 1233.

"Medical necessity" is not explicitly defined in the Medicaid Act. *See Moore*, 637 F.3d at 1232. Rather, "the Medicaid statutes and regulations permit a state to define medical necessity in a way tailored to the requirements of its own Medicaid program." *Rush v. Parham*, 625 F.2d 1150, 1155 (5th Cir. 1980). In Wisconsin, "medically necessary" is defined in the Administrative Code at Wis. Admin. Code § DHS 101.03(96m) and means a "medical assistance service under ch. DHS 107" that is "[r]equired to prevent, identify or treat a recipient's illness, injury or disability," and meets a list of nine enumerated standards. Under Wisconsin's Medicaid program, the determination of "medical

necessity" is made by QAARS consultants, considering information submitted by the Medicaid recipient's health care providers. (Second Declaration of Kelly Townsend ("Second Townsend Decl.") ¶¶ 76, 78, Docket # 48.)

   2.   *Factual Background*

D.U. is a child who suffered serious injuries in a 2005 car accident. D.U. initially qualified for Wisconsin Medicaid services on financial grounds, through August 2013. (Declaration of Peggy A. Corp ("Corp Decl.") ¶ 22, Docket # 45.) Due to changes in family composition, D.U. no longer financially qualified for Wisconsin Medicaid services in August 2013. (*Id.*) Subsequent to August 2013, D.U.'s Wisconsin Medicaid coverage continued through the Katie Beckett Program. (*Id.* ¶ 24.) Under the Katie Beckett Program, D.U. is eligible to receive the same Wisconsin Medicaid services, subject to the same medical eligibility rules, for which she previously was eligible when she financially qualified for Wisconsin Medicaid services. (*Id.* ¶ 25.)

Under Wisconsin Medicaid rules, certain services and products must be reviewed and approved before payment can be made for them. This review process is called prior authorization. (Declaration of Barbara J. Evans ("Evans Decl.") ¶ 6, Docket # 14.) One of the Wisconsin Medicaid services available is private duty nursing care. (Second Townsend Decl. ¶ 7.) The State of Wisconsin will provide as much private duty nursing service as is medically necessary for a Wisconsin Medicaid recipient, provided the recipient meets the private duty nursing threshold requirement of medical necessity for at least eight hours of skilled nursing services per day. (*Id.* ¶ 17.) Prior authorization requests for private duty nursing care are submitted on behalf of Wisconsin Medicaid recipients by their health care providers. (*Id.* ¶ 7.) The requests are reviewed by consultants in the QAARS of the DHS' Office of the Inspector General. (*Id.* ¶¶ 7-8.) The consultants determine whether the requested

services are medically necessary and comply with state administrative codes, regulations, and policies. (*Id.* ¶ 7.)

On February 18, 2013, a prior authorization for private duty nursing services was issued, authorizing D.U. to receive 70 hours per week of private duty nursing care through July 29, 2013. (Declaration of Kelly Townsend ("Townsend Decl.") ¶ 24, Docket # 15.) However, this prior authorization also advised that D.U. was "borderline for meeting [private duty nursing] criteria." (Second Townsend Decl. ¶ 53.) D.U. was instructed to submit additional information with her next prior authorization request. (Townsend Decl., Exh. H, Docket # 15-8.)

On August 13, 2013, D.U. and her father were informed that D.U. no longer met the criteria for private duty nursing services. (Second Townsend Decl. ¶ 54.) However, 70 hours per week of private duty nursing services was authorized for three months to facilitate transition to an alternate level of care. (*Id.*) On November 5, 2013, D.U. submitted a prior authorization request to receive 70 hours per week of private duty nursing services. (Townsend Decl. ¶ 14.) The State requested additional information, which D.U. submitted. (*Id.* ¶ 15.) The request for private duty nursing services was denied on January 2, 2014 because the State determined that the documentation submitted in support of the request did not support that D.U. required at least 8 hours of skilled nursing intervention per day. (*Id.*) Medicaid recipients may file an administrative appeal for the denial of benefits. (Second Townsend Decl. ¶ 31.) If an appeal is filed, an administrative law judge conducts a hearing where evidence of current medical necessity for services may be presented. (*Id.*) A notice of appeal rights was sent to D.U.'s father on January 2, 2014. (*Id.* ¶ 16.) D.U. did not appeal the denial of private duty nursing services. (*Id.* ¶ 19.)

**ANALYSIS**

*1. Preliminary Injunction Standard*

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citations omitted) (emphasis in original). Granting a preliminary injunction involves the "exercise of a very far-reaching power" and is "never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citations omitted).

A plaintiff seeking a preliminary injunction must establish that: (1) she is likely to succeed on the merits and (2) she has no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied. *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). If the moving party meets these threshold requirements, the district court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied. *Id.* However, if the movant does not establish a likelihood of success on the merits or that she will suffer irreparable harm if the injunction is not granted, "then the district court's analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (citation omitted).

A district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits. *Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010); *see also Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) ("Affidavits

are ordinarily inadmissible at trials but they are fully admissible in summary proceedings, including preliminary-injunction proceedings.").

   *2. Application to this Case*

I begin my analysis of D.U.'s motion for a preliminary injunction by addressing the threshold question of whether D.U. has shown a likelihood of success on the merits. Likelihood of success on the merits is a low standard. *Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986) (citation omitted) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that the plaintiff's chances are better than negligible . . . .'").

The law is clear that although a state's participation in Medicaid is optional, once a state has chosen to take part, it must comply with all federal statutory and regulatory requirements. *Bontrager*, 697 F.3d at 606. As previously stated, Wisconsin participates in Medicaid, and the Medicaid Act mandates that participating states provide EPSDT services, including private duty nursing, to all Medicaid-eligible persons under the age of 21. The parties do not dispute that D.U. qualifies for benefits under Medicaid. Thus, the question is whether the 70 hours of private duty nursing services D.U. seeks is "medically necessary." *See Moore*, 637 F.3d at 1234. In situations where the Medicaid recipient's health care provider disagrees with the State on what is "medically necessary," it will fall to the factfinder to resolve the issue at trial. *See id.* at 1257-58 (finding that "both the treating physician and the state have roles to play in determining medical necessity" and when the record presents a material issue of fact over what amount of private duty nursing hours is medically necessary for the plaintiff, the factfinder must resolve the issue at trial). Thus, for purposes of a preliminary injunction, the question is whether D.U. has established that she has a more than

negligible chance of persuading the trier of fact by a preponderance of the evidence that at least 70 hours of private duty nursing services is medically necessary.

D.U. argues that her medical providers have determined that 70 hours of private duty nursing services is medically necessary. D.U. points to a statement from her primary care physician, a declaration from her nurse, and a statement and treatment notes from her pediatric rehabilitation medicine doctor to show that they have opined that 70 hours of private duty nursing care is medically necessary. (Docket # 53-1 at 3.) As a preliminary matter, only the declaration of D.U.'s treating nurse, Karen M. Roberts, R.N., is sworn. The letters from her treating doctors are unsworn and the treatment notes are unauthenticated. Although a court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits, for example, the court may rely on hearsay affidavits, *see Goodman v. Ill. Dept. Of Financial and Professional Regulation*, 430 F.3d 432, 439 (7th Cir. 2005), there is no indication that unsworn statements and unauthenticated documents are sufficient.

However, even considering Roberts' sworn statement and the physicians' unsworn statements and medical records, D.U. has not shown 70 hours of private duty nursing is medically necessary. In her declaration, Roberts, D.U.'s nurse, details D.U.'s various diagnoses and the care that she provides to D.U. on a day to day basis. Roberts does not, however, opine as to the number of hours of skilled nursing care medically necessary for D.U.'s care, much less why 70 hours, specifically, is medically necessary. Nor does Dr. Maya Evans, D.U.'s pediatric rehabilitation medicine doctor, opine as to the amount of hours of skilled nursing care medically necessary for D.U.'s care. Rather, she simply states that "it is apparent that skilled nursing has assisted in [D.U.'s]

recovery/functionality and helped to avoid inpatient hospital stays." (Docket # 53.) D.U.'s medical records also do not speak to the amount of private duty nursing care medically necessary for D.U.

Dr. Ann Marie Sundareson, D.U.'s treating physician, is the only provider to address an amount of skilled nursing hours for D.U. Dr. Sundareson stated that she believes that the 70 hours per week of skilled nursing has allowed D.U. to make "astounding gains" and that she "would propose that if we aspire for [D.U.'s] continued improvement, she will require at least 70 hours of skilled nursing a week." (Docket # 25 at 18.) Dr. Sundareson does not opine that the treatment provided by the State is insufficient in amount, duration, and scope to reasonably achieve the treatment's purpose. *See* 42 C.F.R. § 440.230(b). Rather, she "propose[s]" that "if we aspire for [D.U.'s] continued improvement," D.U. "will require at least 70 hours of skilled nursing a week." (Docket # 25 at 18.) Dr. Sundareson's opinion of "at least 70 hours" is not specific, nor does she specify what would happen to D.U. if she did not have at least 70 hours of skilled nursing a week. Dr. Sundareson opines on what is aspirational for D.U.'s care, not what is medically necessary for her care. Thus, on this record, D.U. has not met her burden of showing that she has a likelihood of success on the merits.

Because D.U. has failed to establish a likelihood of success on the merits, I need not discuss whether D.U. met her burden as to the other elements necessary for a preliminary injunction. *Wisconsin Term Limits v. League of Wisconsin Municipalities*, 880 F. Supp. 1256, 1265 (E.D. Wis. 1994).

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that D.U.'s motion for a preliminary injunction (Docket # 38) is hereby **DENIED**.

The Clerk of Court will contact the parties to schedule further proceedings in this matter.

Dated at Milwaukee, Wisconsin this 15th day of January, 2015.

                                              BY THE COURT

                                              *s/Nancy Joseph*
                                              NANCY JOSEPH
                                              United States Magistrate Judge