# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

D.U.,

    **Plaintiff,**

    **v.**                                     **Case No. 13-CV-1457**

**LINDA SEEMEYER AND KELLY TOWNSEND,**

    **Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

---

D.U., a minor child, sues Linda Seemeyer, Secretary for the Wisconsin Department of Health Services ("DHS") and Kelly Townsend, a nurse consultant for DHS, under 42 U.S.C. § 1983 for allegedly violating the Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") provision of the Medicaid Act ("the Act") by denying D.U.'s Medicaid-funded private duty nursing care. The defendants have moved for summary judgment on D.U.'s claims. For the reasons stated below, the defendants' motion for summary judgment is granted in part and denied in part.

## UNDISPUTED FACTS

D.U. was severely injured in an automobile accident when she was three years old. (Declaration of Norm Underwood ("Underwood Decl.") ¶ 3, Docket # 112.) D.U. suffers from a traumatic brain injury and posttraumatic hydrocephalus. (Underwood Decl. ¶ 4, Defs.' Proposed Findings of Fact ("DPFOF") ¶ 1, Docket # 102 and Pl.'s Resp. ¶ 1, Docket

# 107.) D.U.'s injuries have profoundly affected her physical abilities, health, behavior, and cognitive development. (Underwood Decl. ¶ 3.)

Seemeyer is the Secretary of the DHS. Townsend is a registered nurse consultant who worked for the State of Wisconsin from July 2011 until June 2016. (DPFOF ¶¶ 2-3 and Pl.'s Resp. ¶¶ 2-3.) While employed by the State of Wisconsin, Townsend reviewed and approved or rejected prior authorization requests for private duty nursing, skilled nursing services, home health aide services, and personal care worker services, and traumatic brain injuries. (*Id.* ¶ 3.) At all times relevant, Karen Roberts-Halter, a registered nurse, provided care to D.U. (DPFOF ¶ 6 and Pl.'s Resp. ¶ 6.) D.U. received care for approximately twelve hours per day on weekdays. (*Id.*) Roberts-Halter assisted D.U. with a variety of activities of daily living, including grooming, bathing, feeding, transferring to different chairs or beds, and toileting, as well as other normal activities performed throughout the day. (*Id.* ¶ 21.) Roberts-Halter also takes D.U. on daily outings to stimulate her. (*Id.* ¶ 22.) These outings may take two to three hours every day. (*Id.*) A second registered nurse performed similar tasks to Roberts-Halter and a home health aide assisted with a number of activities of daily living. (*Id.* ¶ 7.)

In August of 2013, DHS issued a prior authorization for private duty nursing for D.U. that explained that D.U. did not meet the criteria for ongoing private duty nursing services because there was not at least eight hours per day of skilled nursing intervention. (*Id.* ¶ 13.) Nonetheless, DHS authorized seventy hours of private duty nursing care per week until November of 2013 to transition D.U. to an alternative level of care. (*Id.*) This followed an earlier warning in February of 2013 that D.U. was borderline for meeting the criteria. (*Id.*)

On November 5, 2013, Townsend received a request from D.U. for seventy hours of private duty nursing care per week and an accompanying letter that appeared to request ninety hours of private duty nursing care per week. (*Id.* ¶ 14.) Townsend denied this request for private duty nursing services submitted by D.U. on January 2, 2014. (*Id.* ¶ 15.) It was her decision to deny the prior authorization request. (*Id.*) Townsend reviewed D.U.'s medical records and denied the request because she determined that D.U. did not need at least eight hours of skilled nursing care. (*Id.* ¶¶ 16-17.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and

"must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*1.    Legal Background*

In 1965, Congress enacted the Medicaid Act, 42 U.S.C. § 1396 et seq., as Title XIX of the Social Security Act. *Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011). Medicaid is a jointly financed federal-state cooperative program, designed to help states furnish medical treatment to their needy citizens. *Id.*; *see also Bontrager v. Indiana Family and Social Services Admin.*, 697 F.3d 604, 605-06 (7th Cir. 2012). States devise and fund their own medical assistance programs, subject to the requirements of the Medicaid Act, and the federal government provides partial reimbursement. 42 U.S.C. §§ 1396b(a), 1396d(b). A state's participation in the Medicaid program is voluntary, but once a state opts to participate, it must comply with federal statutory and regulatory requirements. *Bontrager*, 697 F.3d at 606. Wisconsin participates in the Medicaid program and is therefore bound by its rules and regulations. Wis. Admin. Code Ch. DHS 101.

The Medicaid Act, as supplemented by regulations promulgated by the Department of Health and Human Services ("HHS"), "prescribes substantive requirements governing the scope of each state's program." *Moore*, 637 F.3d at 1232 (citation omitted). Section 1396a provides that a "State plan for medical assistance" must meet various guidelines, including the provision of certain categories of care and services. *See* 42 U.S.C. § 1396a.

Some of these categories are discretionary, while others are mandatory for participating states. *Id.* § 1396a(a)(10) (listing mandatory categories). Section 1396a(a)(17) provides that "[a] State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives of this [Title]."

In 1989, Congress amended the Medicaid Act to broaden the categories of services that participating states must provide to Medicaid-eligible children. *Moore*, 637 F.3d at 1233. The 1989 Amendment mandates that participating states provide EPSDT services to all Medicaid-eligible persons under the age of twenty-one. *Id.* The EPSDT program is codified at 42 U.S.C. § 1396d(r). Section 1396d(r)(5), a catch-all provision, mandates that participating states provide to Medicaid-eligible children "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." Section 1396d(a)(1)-(29) enumerates twenty-nine categories of care and services defined as "medical assistance," which includes "private duty nursing services." *See* § 1396d(a)(8). In other words, under the EPSDT, it is mandatory for states to provide all twenty-nine categories of care, including "private duty nursing services," to Medicaid-eligible children who qualify under the EPSDT provision.

However, a state "may place appropriate limits on a service based on such criteria as medical necessity." 42 C.F.R. § 440.230(d). A state's provision of a required EPSDT benefit, such as private duty nursing services, "must be sufficient in amount, duration, and scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b). Although states do not

have discretion over the categories of medical services and treatment that must be provided to children, the EPSDT did not change the "medical necessity" limitation. *Moore*, 637 F.3d at 1234. Thus, even if a category of medical services or treatments is mandatory under the Medicaid Act, participating states must provide those medical services or treatments for Medicaid recipients only if they are medically necessary. *Id.* at 1233.

2. *Counts Three and Four and State Law Claims*

The defendants move to dismiss Counts Three and Four of D.U.'s amended complaint on the grounds that those counts fail to state claims upon which relief may be granted. (Defs.' Br. in Supp. at 8, Docket # 101.) The defendants also move to dismiss D.U.'s state claims, including a claim for common law nonfeasance, on the grounds that the claims are barred because D.U. failed to file a notice of claim with the attorney general's office pursuant to Wis. Stat. § 893.82. (*Id.* at 10.)

In Count Three, D.U. asserts that the defendants violated the Supremacy Clause of the United States Constitution when prior authorization for various services, including private duty nursing, was denied. (Am. Compl. ¶ 45, Docket # 25.) The defendants argue that the Supreme Court has held that the Supremacy Clause does not confer a private right of action for individual plaintiffs, citing *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) (noting that the Supremacy Clause is not the source of any federal rights and "certainly does not create a cause of action"). D.U. does not contest the defendants' argument. The defendants are entitled to summary judgment on Count Three of the amended complaint.

The defendants also move to dismiss Count Four of the amended complaint. In Count Four, D.U. alleges that she was deprived of her right to receive EPSDT benefits in

violation of 42 U.S.C. § 1983. (Am. Compl. ¶ 46.) Specifically, that the "[d]efendant has subjected D.U. to the deprivation of her rights under color of a statute, ordinance, regulation, custom, or usage of the State of Wisconsin." (*Id.*) The defendants argue that the basis for D.U.'s claim in Count Four is unclear, as she fails to identify which defendant deprived her of her rights. (Defs.' Br. in Supp. at 9.) The defendants further argue that to the extent D.U. is asserting a claim that the defendants have a custom or practice of violating federal law under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978), the claim fails as *Monell* claims may only be brought against municipalities or other local government units. Again, D.U. does not address the defendants' argument; thus, I will grant the defendants' motion for summary judgment as to Count Four of D.U.'s amended complaint.

Finally, the amended complaint generally alleges several "state claims" in ¶¶ 51-57. (Docket # 25.) The defendants argue that these claims must be dismissed because D.U. failed to file a notice of claim with the attorney general's office pursuant to Wis. Stat. § 893.82. Under Wisconsin law, failure to file a notice of claim bars claims for monetary damages, but not those for declaratory or injunctive relief except "where the primary purpose of the suit is to seek monetary relief." *Casteel v. McCaughtry*, 176 Wis. 2d 571, 585-86, 500 N.W.2d 277 (1993).

D.U.'s amended complaint requests permanent injunctive relief enjoining the defendants from violating D.U.'s rights secured by federal law and requiring the defendants to provide all medically necessary services to which D.U. is entitled under the Medicaid program. (Docket # 25 at 16.) D.U. also challenges the January 2, 2014 decision to deny a prior authorization request dated November 5, 2013 and alleges that she has had to use funds from a special needs trust that was established after the settlement of claims related to

the accident that caused her injuries to pay for her skilled nursing care since the State stopped providing it. (*Id.* ¶ 47, p. 16.)

D.U. did not contest the defendants' argument in her response brief. Rather, for the first time at oral argument on the motion, D.U. asserts that the primary purpose of her lawsuit was for injunctive and declaratory relief and thus her state law claims are not barred under Wisconsin law. D.U. stated that the reason she did not contest the defendants' argument regarding her state law claims was because she ran out of space in her brief and believed her time was better spent arguing the other issues presented. D.U. has waived this argument by responding for the first time during oral argument on the motion. *See United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir.2009)) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). Thus, I will grant the defendants' motion for summary judgment on D.U.'s state law claims.

### 3. *Denial of Private Duty Nursing Benefits*

In Count Two of the amended complaint, D.U. alleges that the "defendant" has violated the Medicaid Act by denying D.U. services to which she was entitled under EPSDT. (Docket # 25 at 9-10.) D.U. does not specify which defendant she is alleging violated her rights. In Count Five, D.U. alleges Townsend violated her rights and requests compensatory and punitive damages. (*Id.* at 11-12.) Counts Six and Seven allege denials of physical therapy and occupational therapy, although it is unclear who she is alleging denied

these benefits. (*Id.* at 12-13.) Count Eight alleges denial of personal care worker hours and notes that Townsend was the reviewer. (*Id.* at 13.)[1]

D.U.'s complaint requests both compensatory and punitive damages against Townsend, and declaratory and permanent injunctive relief enjoining "defendant" from violating D.U.'s rights secured by federal law and requiring "defendant" to immediately provide all medically necessary services to which D.U. is entitled. It is undisputed that Townsend no longer works for the State of Wisconsin. (DPFOF ¶ 3 and Pl.'s Resp. ¶ 3.) Thus, it seems D.U.'s request for declaratory and injunctive relief is against Seemeyer, not Townsend.

The defendants argue that both Seemeyer and Townsend are entitled to immunity from the claims against them. Seemeyer was sued in her official capacity and Townsend was sued in her individual capacity. Thus, the defendants argue that Townsend is entitled to qualified immunity and Seemeyer is entitled to sovereign immunity.

### 3.1    Townsend and Qualified Immunity

State officials who occupy positions with discretionary or policymaking authority and are acting in their official capacity may have qualified immunity for claims alleging that the state officials violated the statutory rights of a plaintiff. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). These officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts apply a two-part test to determine whether a defendant is entitled to qualified immunity: 1) whether the conduct complained of violates the Constitution or a

---

[1] Count One requests a preliminary injunction. I denied D.U.'s request on January 15, 2015. (Docket # 76.) The Seventh Circuit affirmed the denial on June 3, 2016. *D.U. v. Rhoades*, 825 F.3d 331 (7th Cir. 2016).

statutory right; 2) whether the right was clearly established at the time the conduct occurred. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Either element of the test may be reached first. *Pearson*, 555 U.S. at 236.

The defendants' argument for qualified immunity for Townsend rests on the second part of the test. The defendants argue that D.U. identifies no case law predating Townsend's decision to deny private duty nursing care that shows it was beyond debate that denying authorization for private duty nursing benefits violated federal law. (Defs.' Br. in Supp. at 19.) At oral argument, the defendants clarified that the issue is whether case law exists that shows Townsend did not have discretion to deny the private duty nursing benefits. D.U. responded that she agrees that Townsend had discretion to make a decision; however, she argued that the issue is whether Townsend followed the law in making the determination.

"A right is clearly established when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012) (internal quotation and citation omitted). D.U. can demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the defendants' conduct was unlawful or by presenting evidence that the defendants' conduct was so patently violative of the statutory right that reasonable officials would know without guidance from a court. *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010).

The Seventh Circuit has stated that:

When looking at closely analogous cases to determine if a right was clearly established at the time of the violation, we look first to controlling precedent on the issue from the Supreme Court and to precedent from this Circuit. In the absence of controlling precedent, we must broaden our survey to include all relevant case law in order to determine "whether there was such a clear

10

> trend in the case law that we can say with fair assurance that the recognition
> of the right by a controlling precedent was merely a question of time." *Jacobs
> v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

*Id.* at 781. Finding that a right is clearly established is not "predicated upon the existence of

a prior case that is directly on point . . . . Although earlier cases involving fundamentally

similar facts can provide especially strong support for a conclusion that the law is clearly

established, they are not necessary to such a finding." *Id.* (internal quotations and citations

omitted). "Even where there are notable factual distinctions between the precedents relied

on and the case before the Court, if the prior decisions gave reasonable warning that the

conduct at issue violated [statutory] rights they can demonstrate clearly established law." *Id.*

Thus, what was the state of the law in 2014 when Townsend denied D.U.'s request

for private duty nursing services? First, the Seventh Circuit had permitted a cause of action

under § 1983 for violations of the EPSDT. *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir.

2003) (Indiana's denial of any funding for placement in psychiatric residential treatment

facilities to children when deemed medically necessary by EPSDT screening violated

Medicaid Act).

Second, in *Moore v. Reese*, 637 F.3d 1220 (11th Cir. 2011), a case factually very

similar to D.U.'s, the Eleventh Circuit had found that both the treating physician and the

state have roles to play in determining medical necessity. In *Moore*, a severely disabled

minor filed a § 1983 action alleging a violation of the Medicaid Act when her Medicaid-

funded private duty nursing care was reduced from 94 to 84 hours per week. The *Moore*

court articulated that a state does not execute its duties under the Medicaid Act simply by

providing a required service; rather, it must still ensure, pursuant to 42 C.F.R. § 440.230(b)

that the required service is "sufficient in amount, duration, and scope to reasonably achieve

its purpose." 637 F.3d at 1261 (quoting 42 C.F.R. § 440.230(b)). The *Moore* court found that while the primary responsibility of determining what treatment should be made available to the patient lies with the treating physician, both the treating physician and the state have roles to play in determining medical necessity. *Id.* at 1257. The *Moore* court cites the Fifth Circuit in *Rush v. Parham*, 625 F.2d 1150, 1156 (5th Cir. 1980) in support. *See Rush*, 625 F.2d at 1156 ("This does not remove from the private physician the primary responsibility of determining what treatment should be made available to his patients."). The *Moore* court remanded the case so that the plaintiff and the state could each present their own experts and allow the factfinder at trial to determine whether the limits the state imposed on the plaintiff's physician's discretion in reducing her nursing hours from 94 to 84 hours a week was reasonable, i.e., to determine whether the limits were sufficient in amount, duration, and scope to reasonably achieve the treatment's purpose. *Id.* at 1258.

With these cases in mind, the "salient question" is whether the "state of the law at the relevant time" gave Townsend fair warning that her actions violated federal law. *See Estate of Escobedo*, 600 F.3d at 781. There is no dispute that D.U. was entitled to all medically necessary services. There is also no dispute that both D.U's treating physician and the state had a role to play in determining which service was medically necessary. At oral argument, D.U. argues, however, that Townsend is not immune because "she did not make a true determination" and that her determination was "made out of whole cloth" on the belief that others could provide care for D.U. This is not supported by the record. Townsend testified that she reviewed D.U.'s medical records prior to denying her request for private duty nursing benefits. (Declaration of Katherine D. Spitz ¶ 4, Deposition of Kelly Townsend ("Townsend Dep.") at 45-46, Docket # 105-3.) The medical record included a

December 16, 2013 letter from D.U.'s primary care physician, Dr. Ann Marie Sundareson, which stated that private duty nursing would be helpful. (Declaration of Kelly Townsend ¶ 15, Exh. C, Docket # 15 and 15-3; Underwood Decl. ¶ 6, Exh. 11, Docket # 112-4.) In the letter, Dr. Sundareson stated that it was her "sincere belief" that D.U. had made "astounding gains in large part to the 70 hours of skilled nursing she receives each week" and that "if we aspire for [D.U.'s] continued improvement, she will require at least 70 hours of skilled nursing a week." (Docket # 112-4.)

Townsend also testified that she relied on the information submitted by D.U.'s nurse, Roberts-Halter. (Townsend Dep. at 45.) Roberts-Halter detailed the care provided to D.U., such as assessing her respiratory and cardiac vital signs, assessing her skin, and assisting her with meals as she "exhibits impulsivity and can not [sic] feed herself" and thus "[m]ust have constant assist[ance]." (Underwood Decl. ¶ 6, Exh. 10, Docket # 112-3; Second Declaration of Kelly Townsend ("Second Townsend Decl.") ¶ 48, Docket # 48; Exh. 4 to Pl.'s Mot. for Prelim. Injunction, Docket # 38-3 at 6.)

In denying the prior authorization, Townsend explained that information provided by D.U.'s father demonstrated that D.U. had experienced only ten focal seizures since July 31, 2013 and that these seizures are not inherently dangerous or life threatening and that caregivers can be trained regarding symptoms that require immediate attention. (Second Townsend Decl. ¶ 58.) Townsend also determined that between January 1, 2013 and June 14, 2014, the majority of outpatient service payments made by the Wisconsin Medicaid Program for D.U. consisted of therapy based services including gait training, self-care management training, sensory integration, therapeutic exercises, and activities and that evaluation and management by specialty clinics made up a small percentage of payments.

(*Id.* ¶ 57.) Townsend averred that to her, "this indicates that D.U. demonstrates medical stability at this time and the documentation does not support more than eight hours a day of skilled nursing intervention." (*Id.*)

Thus, reviewing the law as it existed in 2014 and looking at the facts in the light most favorable to D.U., D.U. has cited to no cases that would have alerted a reasonable nurse consultant that what she was doing (i.e., relying on the information provided by D.U.'s nurse and the medical records rather than deferring to D.U.'s doctor's opinion in making her determination) violated D.U.'s rights. Moreover, the record supports that Townsend's decision was grounded in the submissions before her rather than being "made out of whole cloth" or arbitrary. And even if her decision was wrong, as D.U. argues, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation and citation omitted). On this record, Townsend is protected by qualified immunity in this case and must be dismissed as a party.

### 3.2    Seemeyer and Sovereign Immunity

The defendants argue that Seemeyer, who was sued in her official capacity as Secretary for the Wisconsin Department of Health Services, is entitled to sovereign immunity against D.U.'s claim for money damages. (Defs.' Br. in Supp. at 20.) The Eleventh Amendment precludes citizens from suing state officials in their official capacities for money damages. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). D.U. does not dispute this. (Pl.'s Resp. Br. at 30, Docket # 106.)

However, D.U. argues that sovereign immunity does not apply to suits for injunctive relief and D.U. is seeking a permanent injunction as well as a declaratory judgment. (*Id.*) D.U. is correct that the Eleventh Amendment does not bar suits for prospective relief. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). In determining whether the Eleventh Amendment bars suit against a state official in her official capacity, the court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* (internal quotation and citation omitted).

D.U.'s amended complaint requests not only past monetary damages based on Townsend's alleged improper decision in January 2014 to deny private duty nursing benefits, but requests the defendants be permanently enjoined from violating D.U.'s rights and requiring the defendants to immediately provide all medically necessary services to which D.U. is entitled under Medicaid. (Docket # 25 at 16.) The amended complaint further requests declaratory relief that the defendants' action violate the Medicaid Act. (*Id.*). At oral argument, D.U. clarified that she seeks the following injunctive relief: (1) seventy hours of private duty nursing care until twenty-one years old; (2) no reduction in hours for at least 180 days; and (3) that defendants review any request by applying the appropriate EPSTD standard. Accordingly, because D.U. seeks injunctive relief, Seemeyer is not entitled to sovereign immunity.

### 3.3     Merits of Denial of Private Duty Nursing Benefits

D.U.'s request for injunctive relief discussed above is grounded in her claim that the defendants improperly denied her November 5, 2013 request for seventy hours per week of private duty nursing benefits. Because Seemeyer remains a defendant in this case, I must

address this claim. In order for D.U. to obtain a permanent injunction against Seemeyer preventing her from reducing D.U.'s hours of skilled nursing services, D.U. must first meet her burden with respect to her claim under § 1983. Then, she must satisfy a four factor test before the court can grant a permanent injunction: (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The defendants move for summary judgment on this claim arguing that because D.U. has not shown that at least eight hours per day of skilled nursing services were medically necessary, private duty nursing was properly denied.

As an initial matter, the parties disagree as to the proper definition of "medical necessity" under the federal regulations. In Wisconsin, "medically necessary" is defined in the Administrative Code at Wis. Admin. Code § DHS 101.03(96m) and means a "medical assistance service under ch. DHS 107" that is "[r]equired to prevent, identify or treat a recipient's illness, injury or disability," and meets a list of nine enumerated standards. The nine enumerated standards are:

> 1. Is consistent with the recipient's symptoms or with prevention, diagnosis or treatment of the recipient's illness, injury or disability; 2. Is provided consistent with standards of acceptable quality of care applicable to the type of service, the type of provider and the setting in which the service is provided; 3. Is appropriate with regard to generally accepted standards of medical practice; 4. Is not medically contraindicated with regard to the recipient's diagnoses, the recipient's symptoms or other medically necessary

services being provided to the recipient; 5. Is of proven medical value or usefulness and, consistent with § DHS 107.035, is not experimental in nature; 6. Is not duplicative with respect to other services being provided to the recipient; 7. Is not solely for the convenience of the recipient, the recipient's family or a provider; 8. With respect to prior authorization of a service and to other prospective coverage determinations made by the department, is cost-effective compared to an alternative medically necessary service which is reasonably accessible to the recipient; and 9. Is the most appropriate supply or level of service that can safely and effectively be provided to the recipient.

Wis. Admin. Code § DHS 101.03(96m). D.U. argues that Wisconsin's definition of "medically necessary" is narrower than the EPSDT program's definition, which requires that state Medicaid programs cover all EPSDT services that are "necessary . . . to correct or ameliorate" physical and mental defects and illnesses of Medicaid-eligible individuals under twenty-one years old. (Pl.'s Resp. Br. at 10.)

But "medical necessity" is not explicitly defined in the Medicaid Act. *See D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016) ("Medical necessity is not expressly defined in the Medicaid Act . . . ."); *see also Moore*, 637 F.3d at 1232. Rather, "the Medicaid statutes and regulations permit a state to define medical necessity in a way tailored to the requirements of its own Medicaid program." *Rush v. Parham*, 625 F.2d 1150, 1155 (5th Cir. 1980); *see also M.A. v. Norwood*, 133 F. Supp. 3d 1093, 1103 (N.D. Ill. 2015) (stating that the Medicaid Act does not explicitly define "medical necessity" and finding that a state's provision of a required EPSDT service "must be sufficient in amount, duration, and scope to reasonably achieve its purpose") (quoting 42 C.F.R. § 440.230(b)).

D.U. argues that "medically necessary" services are those recommended by one's appropriate healthcare provider (Pl.'s Resp. Br. at 10). However, the case law indicates that while the treating physician has the "primary responsibility of determining what treatment should be made available to his patients," the "state Medicaid agency can review the

17

medical necessity of treatment prescribed by a doctor on a case-by-case basis." *Rush*, 625 F.2d 1155-56. Thus, as discussed earlier, both the treating physician and the state have roles to play in determining medical necessity. *Norwood*, 133 F. Supp. 3d at 1103.

Under Wisconsin law, "private duty nursing" is defined as "RN or LPN services provided to a recipient who requires 8 or more hours of skilled nursing care in a calendar day." Wis. Admin. Code § DHS 101.03(134m). Skilled nursing services is defined as "those professional nursing services furnished pursuant to a physician's orders which require the skills of a registered nurse or licensed practical nurse and which are provided either directly by or under the supervision of the registered nurse or licensed practical nurse." Wis. Admin. Code § DHS 101.03(163). The Code provides the following examples of services which would qualify as skilled nursing services:

> (a) Intravenous, intramuscular, or subcutaneous injections and hypodermoclysis or intravenous feeding; (b) Levin tube and gastrostomy feedings; (c) Nasopharyngeal and tracheotomy aspiration; (d) Insertion and sterile irrigation and replacement of catheters; (e) Application of dressings involving prescription medications and aseptic techniques; (f) Treatment of extensive decubitus ulcers or other widespread skin disorder; (g) Heat treatments which have been specifically ordered by a physician as part of active treatment and which require observation by nurses to adequately evaluate the patient's progress; (h) Initial phases of a regimen involving administration of medical gases; and (i) Rehabilitation nursing procedures, including the related teachings and adaptive aspects of nursing that are part of active treatment, e.g., the institution and supervision of bowel and bladder training programs.

*Id.*

The defendants argue that D.U. has not shown that eight hours per day of skilled nursing care was medically necessary; thus, Townsend's denial of D.U.'s request for private duty nursing services was proper. The defendants argue that D.U. provided some new evidence that was not provided at the time the denial occurred and that this evidence is

irrelevant as to whether Townsend's decision to deny private duty nursing in January 2014 complied with the law. (Defs.' Reply Br. at 6, Docket # 114.) The defendants argue that while some of the tasks Roberts-Halter itemizes in her declaration that she provides to D.U. may constitute skilled nursing cares, those tasks did not comprise eight hours or more per day of skilled nursing cares. (*Id.*)

D.U. has established specific facts showing that there is a genuine issue for trial as to whether private duty nursing care is medically necessary. D.U.'s treating nurse, Karen Roberts-Halter, R.N., averred that she has been treating D.U. since November 2007. (Declaration of Karen M. Roberts-Halter, R.N. ("Roberts-Halter Decl.") ¶ 5, Docket # 108.) Roberts-Halter notes D.U.'s various diagnoses, conditions, and special needs, and states that D.U. must be assessed on a regular basis by a nurse due to her complex diagnoses and medical conditions. (*Id.* ¶¶ 7, 12.) Roberts-Halter states that D.U.'s "complex needs and medical cares" require consistent full-time skilled nursing care. (*Id.* ¶ 16.) Roberts-Halter avers that she provides daily and often hourly nursing assessments and daily activities which support D.U.'s various therapy regimens. (*Id.* ¶ 20.)

Roberts-Halter states, as examples of the skilled nursing care she provides, the use of a Yankauer (an oral suctioning tool used in medical procedures), because D.U. will forget to chew and/or swallow her food and demonstrates impulsive feeding behavior. (*Id.* ¶ 23.) Roberts-Halter also states that she removes fecal impactions. (*Id.* ¶ 26.) Roberts-Halter states that both of these activities must be performed by a nurse. (*Id.* ¶¶ 23-24, 26.) Roberts-Halter further provides examples of skilled nursing activities that she performs on a daily basis, including neuromuscular electrical stimulation to increase her strength and range of motion and offset the effects of muscle disuse (*id.* ¶ 29); assessment of circulation to lower

extremities due to the danger of feet and toes becoming cyanotic (*id.* ¶ 32); and examination and treatment of skin breakdown, contractures, and deformities due to the fact D.U. is paralyzed on the right side (*id.* ¶ 35). Roberts-Halter states that discontinuing private duty nursing care may put D.U. at risk of illness, injury, and hospitalization and could potentially lead to placement in a skilled nursing facility. (*Id.* ¶ 38.) This creates an issue of whether private duty nursing care is the most cost-effective alternative and whether it is the most appropriate level of service.

Further, D.U.'s primary care physician, Dr. Ann Marie Sundareson, averred that based on D.U.'s conditions, she would benefit from skilled nursing care for 10 to 12 hours per day. (Declaration of Ann Marie Sundareson, M.D. ("Sundareson Decl.") ¶¶ 6, 8-11, 13, Docket # 111.) Kathleen Papa, R.N., a registered nurse who has assessed D.U. six times since April 2011 and has personally observed her and the effects of her injuries, states that the types of assessments that Roberts-Halter performs on a regular basis could not be delegated to a home health aide or personal care worker. (Declaration of Kathleen Papa, R.N. ("Papa Decl.") ¶¶ 8, 26, Docket # 110.)

While the defendants have provided the declaration of Marcie L. Oakes, R.N., who states that the tasks performed by Roberts-Halter need not be performed by a nurse, (Declaration of Marcie L. Oakes ("Oakes Decl."), Docket # 104), this will be an issue for the fact finder to determine at trial. At this juncture, D.U. has presented sufficient evidence to create a genuine issue of material fact as to whether at least eight hours per day of skilled nursing care was medically necessary. Because, taking the record as a whole, a rational trier of fact could find for D.U., summary judgment is not appropriate as to D.U.'s claim for

injunctive relief against defendant Seemeyer and the defendants' motion is denied as to that claim.

## CONCLUSION

D.U. brings this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated the EPSDT provision of the Medicaid Act when she was denied private duty nursing benefits. The defendants moved for summary judgment on D.U.'s amended complaint, arguing that Counts Three and Four and the State Law Claims of the amended complaint should be dismissed. The defendants further argue that D.U.'s § 1983 claims regarding the provision of private duty nursing benefits must also be dismissed because there is no genuine dispute of material fact as to whether private duty nursing care was medically necessary and the defendants are entitled to immunity.

The defendants' motion for summary judgment is granted in part and denied in part. D.U. does not contest the defendants' argument that Counts Three and Four should be dismissed and has waived her arguments as to the State Law Claims; thus, I will grant the defendants' motion as to those claims. I further find that defendant Townsend is entitled to qualified immunity and is dismissed from this action. However, I find that defendant Seemeyer is not entitled to sovereign immunity as to D.U.'s claim for injunctive relief and because I find that a genuine dispute of material fact exists as to whether private duty nursing care was medically necessary, the defendants' motion for summary judgment is denied as to the claim against Seemeyer.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 100) is **GRANTED IN PART AND DENIED IN PART**. The

defendants' motion as to Counts Three and Four and the State Law Claims in plaintiff's amended complaint is granted and those claims are dismissed. The defendants' motion is also granted as to defendant Townsend and she is dismissed from this action. However, the defendants' motion as to defendant Seemeyer is denied.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file a response letter (Docket # 119) is **GRANTED**.

**IT IS FURTHER ORDERED** that the clerk's office will contact the parties to set a telephone conference for further scheduling in this matter.

Dated at Milwaukee, Wisconsin this 20th day of February, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge